OPINION
{¶ 1} This appeal arises from the Portage County Court of Common Pleas wherein, appellant, Deborah L. Colby, appeals her conviction of two counts of possession of marijuana.
 {¶ 2} In early March 2001, police officers of the Brimfield Township Police Department and the Highway Patrol of several states, including Ohio, were notified, via a BOLO (be on the look out), that a 2001, white Pontiac Bonneville was carrying a suspected drug shipment. Officers were instructed that, if the vehicle was spotted, they were to "develop probable cause" and stop the vehicle. Detective Blough of the Western Portage County Drug Task Force personally provided Officer Delisle of the Brimfield Township Police Department with specific information regarding the drug shipment, including a description of the vehicle, the vehicle's registration number, and the name of appellant as the driver of the vehicle. Detective Blough received this information as a result of a cooperative effort between the Drug Task Force and the FBI in which, via interception of cellular telephone conversations and surveillance of a local hotel, it was determined that appellant would be traveling through Brimfield Township with a shipment of drugs.
 {¶ 3} Testimony at the suppression hearing revealed that, on March 8, 2001, Officer Delisle waited in the area of Interstate 76 and State Route 43, in Brimfield Township, for appellant in a vehicle matching the description provided by the Drug Task Force. Officer Delisle spotted the vehicle and followed it a short while. After noting that the driver failed to use a turn signal twice, he stopped the vehicle. Officer Delisle testified that he approached the vehicle and conversed with appellant about her travel plans and her intention to visit a sick relative in New York. Officer Delisle noticed trash and food wrappers in the back seat of the vehicle, as well as a suitcase and a garbage bag. He testified that he also noticed that the rear of the vehicle was sitting lower in the back than the officer felt was normal for a newer vehicle. Appellant told Delisle that she had her clothes and toiletries in the back seat and did not respond to Delisle's concerns about the low-riding trunk.
 {¶ 4} Officer Delisle issued a citation for the signal violation and radioed for a canine unit. Approximately ten minutes later, the canine unit arrived and was led around the vehicle. The dog alerted on the outside of the vehicle. The dog was then sent inside the vehicle, and alerted on the back seat and rear interior of the vehicle. The trunk was subsequently opened, and the dog alerted on packages in the trunk. The officer recovered four duffle bags containing a total of seventy-seven 2.2 pound bundles of marijuana.
 {¶ 5} On March 14, 2001, appellant was indicted on two counts of possession of marijuana. On March 23, 2001, the trial court granted appellant's motion to preserve "any and all radio transmissions, KDT messages, and/or communication between Dispatch and any other police officers, or government offices or employees" generated by the Kent State University Police, Brimfield Police Department, and/or the city of Kent Police Department relating to appellant's March 8, 2001 stop.
 {¶ 6} Appellant filed a motion to suppress on April 30, 2001, alleging that the stop and subsequent search of her vehicle violated theFourth Amendment. A supplemental motion to suppress was filed on June 13, 2001, further alleging that any evidence derived from wire or telephone taps should be suppressed. A hearing on appellant's motion to suppress was held on June 28, 2001. Appellant filed a motion to dismiss on that same day based upon the state's failure to preserve the radio transmissions per the March 23rd court order. The trial court issued a judgment entry on October 30, 2001, overruling appellant's motions to suppress and motion to dismiss. The court noted that "there was nothing to support any assumption that such tapes were exculpatory or had been destroyed in bad faith by the State." The court also noted that tapes from other police agencies using the same radio frequency were provided to the defendant.
 {¶ 7} Appellant entered a written plea of no contest on December 31, 2001. The trial court subsequently accepted appellant's plea and found her guilty of both counts of possession of marijuana. Appellant was sentenced to a term of eight years for each count, to be served concurrently, as well as a mandatory drug fine of $7,500 for each count. Appellant filed this appeal, citing three assignments of error.
 {¶ 8} Appellant's first assignment of error is:
 {¶ 9} "The trial court erred when it refused to dismiss the indictment because the state failed to preserve records of radio transmissions that the court ordered the state to preserve."
 {¶ 10} In her first assignment of error, appellant argues that the state's failure to preserve radio transmissions relating to the stop warranted a dismissal of the indictment.
 {¶ 11} When the state fails to preserve materially exculpatory evidence or if it exercises bad faith in failing to preserve potentially useful evidence, a criminal defendant's due process rights have been violated.[1] To be materially exculpatory, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[2]
 {¶ 12} Appellant does not argue that the tapes were materially exculpatory but, rather, that the tapes were destroyed before the exculpatory or inculpatory nature could be ascertained. Appellant also asserts that the state must bear the burden of proving that the tapes were not exculpatory. We disagree.
 {¶ 13} Because there is nothing to suggest that the tapes possessed any apparent exculpatory value, any evidence contained on the tapes must be considered merely potentially useful.[3] No due process violation occurs with the destruction of potentially useful evidence unless such evidence was destroyed in bad faith.[4] Bad faith is more than bad judgment or negligence, it implies "`"a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."'"[5]
 {¶ 14} Appellant attempts to establish bad faith by contending that the state was ordered to preserve the tapes, failed to do so, and did not establish that the tapes were not exculpatory. Appellant correctly asserts that the state did not preserve the tapes. At the suppression hearing, the state stipulated that the radio transmission of the Brimfield Township Police Department, which goes through the Kent State University Police Department, had not been preserved. However, the state provided tapes of March 8, 2001 radio transmissions, recorded by the city of Kent Police Department. An officer from the city of Kent Police Department testified at the suppression hearing that the city of Kent Police Department operates on the same radio frequency as Brimfield Township, via Kent State University. Thus, although the state failed to ensure that the radio transmissions from the Brimfield Township Police Department were preserved, the state provided tapes from the same radio frequency for the March 8, 2001 stop. Thus, as the state provided radio transmissions from the March 8, 2001 stop, bad faith cannot be inferred by the failure to preserve the Brimfield Township tapes.
 {¶ 15} Appellant's first assignment of error is without merit.
 {¶ 16} Appellant's second assignment of error is:
 {¶ 17} "The trial court erred in violation of the Fourth Amendment of the United States Constitution when it failed to sustain the motion to suppress, because the evidence showed that the officer prolonged the stop beyond its original purpose absent a reasonable basis."
 {¶ 18} In her second assignment of error, appellant contends that, although Officer Delisle had probable cause to stop the vehicle, the stop was prolonged beyond its original purpose in violation of appellant'sFourth Amendment rights.
 {¶ 19} Initially, we note that, at a hearing on a motion to suppress, the trial court functions as the trier of fact. Thus, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses.[6] In evaluating an appeal of a motion to suppress evidence, "the court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence."[7]
 {¶ 20} A police officer's observation of a violation of a traffic law constitutes sufficient grounds to stop the vehicle committing the violation.[8] In the instant case, Officer Delisle stopped the car for twice failing to use a turn signal. This constituted probable cause to stop the vehicle. Neither party disputes this point.
 {¶ 21} In evaluating the propriety of an investigative stop, the reviewing court must examine the totality of the circumstances surrounding the stop as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold."[9]
 {¶ 22} The pivotal inquiry in this case is whether Officer Delisle was justified in his continued detention of appellant. Once the suspicion which gave rise to the initial stop evaporated, any additional intrusion or detention had to have been supported by specific and articulable facts demonstrating the reasonableness of the continued detention.[10]
 {¶ 23} After stopping the vehicle, Officer Delisle engaged appellant in conversation regarding her travel plans. While conversing, the officer noted the condition of the vehicle; specifically, the garbage bag and suitcase in the back seat, as well as trash and fast food wrappers. The officer also testified that he noticed that the rear of the vehicle was sitting low, as though something heavy was in the back. Officer Delisle then issued a citation and summoned a canine unit to conduct a drug sniff as the vehicle matched the description provided in the BOLO. Approximately ten minutes passed before the canine unit arrived. Appellant contends that this continued detention was unreasonable. The trial court concluded that "[b]ased on the information previously received, the condition of the driver and the vehicle, and the total circumstances, the Officer had sufficient reasonable suspicions to secure the canine sniff."
 {¶ 24} Although the purpose for the original stop was satisfied, Officer Delisle and the trial court noted that the totality of the circumstances to-wit: the BOLO, the specific identification provided to Officer Delisle from Detective Blough, along with the condition of the vehicle, constituted reasonable suspicion to allow Officer Delisle to detain appellant approximately ten minutes longer to summon the canine unit.
 {¶ 25} We find the trial court's finding to be supported by competent, credible evidence and appellant's motion to suppress was properly overruled. Officer Delisle possessed the BOLO, alerting him to be on the look out for a white 2001 Pontiac Bonneville. He also received additional information from Detective Blough, which included the license plate number, the vehicle registration number, and the identification of appellant. Officer Delisle then observed the outside posture of the vehicle, as well as the interior condition. In applying the totality of the circumstances, Officer Delisle possessed sufficient reasonable suspicion to warrant the additional detention required to summon the canine unit.
 {¶ 26} Appellant's second assignment of error is without merit.
 {¶ 27} Appellant's third assignment of error is:
 {¶ 28} "The conviction should be reversed because the state failed to meet its burden of proving that the telephone interceptions and other surveillance techniques were lawful."
 {¶ 29} In her third assignment of error, appellant asserts that the FBI surveillance of cellular telephone calls and the FBI surveillance of the hotel were both unlawful. Appellant filed a motion to suppress evidence under Title III of the Omnibus Crime Control Act ("OCCA"), asserting a violation of the Act's prohibition of the interception and disclosure of wire and oral communications.[11]
 {¶ 30} Only an "aggrieved person," defined by statute as a party to an intercepted wire communication, has standing to challenge the admissibility of the intercepted conversation.[12] Pursuant to the OCCA, an "aggrieved party" is defined as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed."[13] An aggrieved party "must be a party to the communications which the government seeks to use at trial, or [be able to assert] that the conversations took place on his premises."[14] When a defendant is not a party to an intercepted telephone conversation, she has no legitimate expectation of privacy in the conversation and, thus, lacks standing to assert that a constitutional violation has occurred.[15]
 {¶ 31} Four telephone conversations were intercepted by the FBI and Detective Blough of the Drug Task Force. The first was a February 19, 2001 conversation between Anthony Parra ("Parra") from this area and Joseph Furrella ("Furrella") from Tucson, Arizona, relaying that a female staying at the Hampton Inn in Brimfield Township, Ohio, Room 104, was carrying a drug shipment.
 {¶ 32} The second conversation, also on February 19, 2001, was between Parra and Martin Wetzel. In that discussion, both discussed how the marijuana was inventoried and stored for future distribution.
 {¶ 33} The third conversation was again between Parra and Furrella on March 5, 2001. Furrella relayed that another drug shipment was coming to the area, with the same driver and the same car.
 {¶ 34} The fourth and final conversation was between Parra and Furrella on March 8, 2001, in which they discussed specific details of where the car would be traveling and at which hotel the driver would be staying.
 {¶ 35} As a result of these phone conversations, the FBI set up video surveillance at the hotel discussed by Parra and Furrella. From this surveillance, they observed appellant's vehicle, the license plate, and a person matching the description of appellant getting in and out of the vehicle. This information subsequently became part of the BOLO issued by the FBI and the Drug Task Force.
 {¶ 36} Appellant was not a party to the telephone conversations intercepted and does not assert that the conversations took place on her premises. Thus, although information obtained from the intercepted conversations ultimately led the police to her, she lacks standing to challenge the admissibility of the telephone conversation interceptions and the surveillance conducted as a result of the intercepted telephone conversations.
 {¶ 37} Appellant's third assignment of error is without merit.
 {¶ 38} Therefore, based upon the foregoing, the judgment of the trial court is affirmed.
Judgment affirmed.
Cynthia Westcott Rice and Robert A. Nader, JJ., Concur.
Robert A. Nader, J., retired, of the Eleventh Appellate District, sitting by assignment.
[1] State v. Wolf (Jan. 31, 1997), 11th Dist. No. 94-L-047, 1997 Ohio App. LEXIS 348, at *14, citing State v. Lewis (1990), 70 Ohio App.3d 624,634. See, also, Arizona v. Youngblood (1988), 488 U.S. 51, 57-58.
[2] California v. Trombetta (1984), 467 U.S. 479, 489.
[3] State v. Wolf, at *14.
[4] Youngblood, supra, at 57-58.
[5] (Citations omitted.) State v. Franklin, 2d Dist. No. 19041, 2002-Ohio-2370, ¶ 47.
[6] State v. Mills (1992), 62 Ohio St.3d 357, 366.
[7] State v. Searls (1997), 118 Ohio App.3d 739, 741.
[8] Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12.
[9] State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
[10] State v. Chatton (1984), 11 Ohio St.3d 59, 63.
[11] Section 2510, et seq., Title 18, U.S. Code.
[12] Section 2518(10)(a), Title 18, U.S. Code.
[13] Section 2510(11), Title 18, U.S. Code.
[14] (Citations omitted.) United States v. Torres (N.D.Ill. 1984),583 F. Supp. 86, 95.
[15] Alderman v. United States (1960), 394 U.S. 165, at paragraph one of the syllabus.