OPINION
{¶ 1} Defendant-appellant Mark A. Combs [hereinafter appellant] appeals from the denial of his motion to dismiss and his subsequent conviction and sentence in the Delaware Municipal Court on one count of driving while under the influence. Plaintiffappellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 9, 2003, at approximately 9:00 p.m., Debra Bateman telephoned the Ohio Highway Patrol and reported a possible "DUI" driver. Ms. Bateman provided the dispatcher with the license plate number, description and location of the vehicle. Ohio State Highway Patrol Trooper Fraley was nearby and soon caught up to the suspect vehicle. The vehicle was being driven by appellant. After observing one or more lane violations and a wide turn into a fishing lane, Trooper Fraley stopped appellant's vehicle, activating his dash camera.
 {¶ 3} The Trooper conducted field sobriety tests and an in-cruiser interrogation of appellant. The Trooper administered a portable breath test to appellant. It registered a negligible amount of alcohol. According to the Trooper, appellant admitted to smoking a joint earlier with his brother. Appellant was placed under arrest. Appellant subsequently submitted to urinalysis testing. The sample was tested and the presence of THC was found.
 {¶ 4} A traffic complaint was filed against appellant in the Delaware Municipal Court. Appellant was charged with one count of driving while under the influence [hereinafter DUI], in violation of R.C. 4511.19(A)(1).
 {¶ 5} On May 13, 2004, appellant's counsel filed a demand for discovery and a motion to preserve evidence. On May 19, 2004, the trial court granted the motion and ordered all evidence, including all video and audio recordings, to be preserved.
 {¶ 6} On July 25, 2003, appellant filed a motion to dismiss. In the motion to dismiss, appellant argued that his due process rights had been violated when the State improperly destroyed a video tape of the stop and subsequent events and a recorded statement of a potential prosecution witness, namely a recording of Ms. Bateman's call to the State Highway Patrol. A hearing was conducted on July 31, 2003, and September 10, 2003. On September 16, 2003, the trial court issued a written decision which overruled appellant's motion to dismiss.[1]
 {¶ 7} Subsequently, on November 20, 2003, appellant entered a plea of no contest to one count of DUI, in violation of R.C.4511.19(A)(1), and was found guilty. Appellant was then sentenced to 30 days in jail with 27 days suspended, given credit for three days served and ordered to complete "D.I.P." Appellant was fined $350.00 and placed on probation for six months. Lastly, appellant's driver's license was suspended for 180 days.
 {¶ 8} Appellant filed a motion for stay of execution of sentence pending appeal. The trial court granted the motion.
 {¶ 9} It is from this conviction and sentence that appellant appeals, raising the following assignments of error.
 {¶ 10} "I. The trial court committed error prejudicial to appellant by placing the burden of proof on the appellant to show that the evidence, which was destroyed by the state after the arresting officer received a court order to preserve it was exculpatory.
 {¶ 11} "II. The trial court committed error prejudical to appellant in finding that officer who knowingly destroyed the video and audio tape evidence, after receiving the court order to preserve it, did not act in bad faith and further finding that the evidence was not exculpatory.
 {¶ 12} "III. The trial court erred to the prejudice of the defendant-appellant by in [sic] not allowing the appellant to testify during an Evid. R. 104(D) hearing for the limited purposes of verifying the accuracy of a diagram of the scene and showing that the field sobriety tests were conducted in front of the cruiser the [sic] dash mounted camera, without being subjected to cross-examination as to the ultimate issue in an omvi prosecution."
 I {¶ 13} In the first assignment of error, appellant contends that the trial court erred when it placed the burden upon appellant to show that the evidence allegedly destroyed by the State was exculpatory. We disagree.
 {¶ 14} In Arizona v. Youngblood (1988), 488 U.S. 51,109 S. Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. The United States Supreme Court stated the following:
 {¶ 15} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Maryland v. Brady (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58.
 {¶ 16} Thus, the Youngblood Court established two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith.
 {¶ 17} In this case, the trial court held that the burden to show that the evidence destroyed was exculpatory fell upon appellant, the defendant. In this first assignment of error, appellant asks this court to apply a burden shifting rule of law adopted by the Tenth District Court of Appeals in Columbus v.Forest (1987), 36 Ohio App.3d 169, 522 N.E.2d 52. In Forest,
the court of appeals held as follows: "Normally, . . . it is the accused who bears the burden of proof on both the exculpatory value of the evidence and that the evidence cannot be obtained by other reasonable methods. Id. at 489-490, 104 S.Ct. at 2534. Where, as here, the state breaches its duty to respond in good faith to a defense request to preserve evidence, we believe the appropriate remedy is to shift to the state the burden of proof as to the exculpatory value of the evidence. See 2 LaFave 
Israel, Criminal Procedure (1984, Supp. 1987), Section 19.5, at 107, fn. 65.5.
 {¶ 18} The Forest court went on to state that they "recognize[d] that this burdenshifting remedy may impose upon the state a nearly impossible task in some cases. Just as few criminal defendants are able to prove the apparent exculpatory value of lost or destroyed evidence, so, too, will the state have a similar problem in attempting to prove the evidence was not exculpatory. Despite this concern, we do not believe the remedy is unduly harsh. Even if the prosecution fails, in every case, to carry its burden, the defense still must show that the evidence cannot be obtained via alternate channels. Moreover, we fail to ascertain why the state is unable to simply respond to a defense request to preserve evidence, even if such response merely informs the accused that the evidence will be destroyed in accordance with normal practice." Forest, supra, at 173.
 {¶ 19} However, this court has consistently rejected the holding in Forest and held that the burden of proof is and remains on the defendant to show the exculpatory nature of the destroyed evidence. See State v. Birkhold, (April 22, 2002), Licking App. No. 01CA104, 2002 WL 727154; State v. Hill (March 8, 1999), Stark App. No. 1998CA00083, 1999 WL 174921; State v.Blackshear (June 19, 1989), Stark App. No. CA-7638, 1989 WL 66650.
 {¶ 20} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 21} In the second assignment of error, appellant argues that the trial court erred when it found that Trooper Fraley did not act in bad faith and that the evidence destroyed was not exculpatory. We agree, in part. We find that the defendant failed to establish that the evidence was materially exculpatory. But we find that the defendant did establish that Trooper Fraley acted in bad faith.
 {¶ 22} In this case, Trooper Fraley destroyed the video tape used to record the stop of appellant's vehicle and subsequent events and employees of the State of Ohio may have destroyed a recorded cell phone call that provided the basis for the initial stop of appellant's vehicle. This court will address the destruction of the video tape first.
 {¶ 23} Pursuant to the Youngblood analysis, the first issue this court must determine is whether the evidence destroyed was materially exculpable evidence or, merely, potentially useful. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. State v. Johnson (1988),39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' [citations omitted]" State v.Colby, Portage App. No. 2001 CR 0096, 2004-Ohio-343.
 {¶ 24} If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscience wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.
 {¶ 25} With regard to procedure, we note that the denial of a motion to dismiss on the ground that the government failed to preserve exculpatory evidence is reviewed de novo. State v.Johnson, Cuyahoga App. No. 82527, 2003-Ohio-4569; United Statesv. Wright, 260 F.3d 568, 570 (6th Cir. 2001).
 {¶ 26} In this case, Trooper Fraley testified that he turned his camera on as he stopped appellant's vehicle and believed, at the time, that he was recording the relevant events. The Trooper, therefore, would have visually recorded any of the events which occurred in front of the camera and audibly recorded any conversation between Trooper Fraley and appellant. We agree with the trial court that appellant has failed to demonstrate that there is a reasonable probability that, had the evidence been disclosed to the defense, whether or not it was blank, the result of the proceeding would have been different. Accordingly, we find that the video tape was not materially exculpatory but, rather, was potentially useful.
 {¶ 27} Because we find that the video tape was potentially useful evidence, we must now consider whether appellant has met his burden to show that the State acted in bad faith. Upon due consideration, we find that appellant has shown that the State acted in bad faith.
 {¶ 28} In this case, appellant acknowledged that the State Patrol has a policy to keep video tapes for 30 days, or longer if it is needed for court. Trooper Fraley acknowledged that a few days after appellant's arrest, he received a request for the video tape. Later, he received an order to preserve the video tape. However, the Trooper took no steps to preserve the video tape. In fact, after receiving the request and Order to preserve the tape, the Trooper took steps to have the tape erased. It was after receipt of the request and Order that the Trooper stated that he retrieved the video tape from the area in which it was stored and began to review the video tape to find the video of appellant's arrest. According to the Trooper, the video was "staticy and blue and had no audio, no video. There was nothing." TR. at pg. 41. Trooper Fraley then fast forwarded through the video tape, randomly viewing the video tape. The Trooper could not remember if he fast forwarded in a way that allowed him to view the video tape's contents or in a way that did not. Tr. at pg. 62. However, Trooper Fraley admitted that he only watched parts of the video tape. Tr. at pg. 58. In addition, while Trooper Fraley attempted to explain the alleged problems with the recording by saying he had had problems with his camera and the video tapes, he also admitted that there was a possibility that there could have been a problem with the video player. After viewing portions of the video tape, Trooper Fraley testified that he contacted the prosecutor with this information and then took steps that led to the erasure of the video tape. Tr. at pg. 44.
 {¶ 29} Although we recognize that this is a difficult decision, we find that appellant has met his burden. The Trooper took it upon himself to decide to destroy this video tape. While that in and of itself is disturbing, it is not enough alone to meet the burden of bad faith. However, in this case, the Trooper failed to follow the policy of the State Patrol to preserve the video tape, and failed to follow a discovery request and an Order to preserve the video tape. In addition, he did not ensure that the entire video tape was blank or that the video player was functioning properly. Likewise, the State, through the prosecutor with whom Trooper Fraley spoke, apparently did not take steps to ensure that the tape was actually blank nor instruct Trooper Fraley to retain the tape. After the prosecutor was notified of the alleged problem with the recording, the tape was erased. Thus, it appears that the prosecutor took no steps to preserve this evidence either.
 {¶ 30} The video tape should have been turned over in response to the request and preserved pursuant to the Order to Preserve, even if the camera or tape malfunctioned. To fail to do so only increased the perception of wrong doing by the State.
 {¶ 31} Ultimately, this court can never know definitively whether this was a case in which the Trooper and the prosecutor involved acted in bad faith or simply exercised extremely poor judgment through a series of events. However, we find that appellant has made a sufficient showing of bad faith to find that appellant's due process rights were violated.
 {¶ 32} Accordingly, appellant's second assignment of error is sustained, in part, in that we find that the State acted in bad faith when it failed to preserve the video tape. As such, we find that any arguments concerning the destruction of the audio tape of the cell phone call by Ms. Bateman are moot.
 III {¶ 33} In the third assignment of error, appellant contends that the trial court erred by not allowing appellant to testify during the hearing for the limited purpose of verifying the accuracy of a diagram that showed that the field sobriety tests were conducted in front of the cruiser, thus in front of the Trooper's in-dash camera, rather than in back of the cruiser, as testified to by the Trooper. In light of this court's holding as to assignment of error II, assignment of error III is moot.
 {¶ 34} Because appellant's motion for dismissal should have been granted, the judgment of conviction and sentence of the Delaware County Municipal Court is vacated. Further, pursuant to App. R. 12(B), we hereby dismiss the charge of driving while under the influence.
Edwards, J., Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware Municipal Court is vacated. Pursuant to App. R. 12(B), the charge of driving while under the influence is dismissed. Costs assessed to appellee.
[1] In overruling appellant's motion to dismiss, the trial court found as follows:
"In the instant case, the Defendant has failed to demonstrate the lost evidence was materially exculpatory. The video tape appears to never have existed. Trooper Fraley stated that when he reviewed the video it contained no video or audio. The camera or the tape malfunctioned.
"The audio tape of Ms. Bateman's dispatch call is also not exculpatory. She is available as a witness and has made a written statement. It is probably that she will be called as a witness at trial and certainly could be called by the defense. Therefore, the Defendant can obtain this information by a reasonable means which is her actual testimony.
"Even if the Defendant failed to establish that the lost evidence was materially exculpatory, he can still establish his due process rights were violated by showing bad faith on the part of the police or the State in failing to preserve the evidence. The term "bad faith" generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscience wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another. In this instance the Defendant has presented no evidence that this evidence was destroyed in bad faith. The videotape never recorded the stop. There was no proof that the audio tape actually existed, but if it was destroyed it was due to negligence and miscommunication, not bad faith." Sept. 16, 2003, Judgment Entry, pgs. 2 — 3.