OPINION *Page 2 
{¶ 1} Defendant-appellant Vance Brown [hereinafter appellant] appeals from the denial of his motion to dismiss and his subsequent convictions and sentences in the Licking County Municipal Court on one count of domestic violence, a misdemeanor of the first degree in violation of R.C. 2919.25, and one count of resisting arrest, a misdemeanor of the second degree in violation of R.C. 2921.33. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On October 19, 2005, appellant became involved in an incident with his "off and on" girlfriend, Ms. Jenny Davis. Ms. Davis described her relationship with appellant, at that time, as "just boyfriend and girlfriend." Ms. Davis and the appellant were married prior to the date set for appellant's jury trial.
 {¶ 3} According to the complainant, the parties became involved in a disagreement that eventually became physical. Ms. Davis testified that appellant "grabbed [her] by the back of [her] hair and yanked [her] up and put [her] in the doorway and kicked [her] out the door." [T., April 17, 2006 at 42.]. After ejecting Ms. Davis from the residence, appellant began throwing her belongings out of a second floor window. This testimony was corroborated by a neighbor who witnessed the events as they occurred. [Id. at 83]. The neighbor called the police.
 {¶ 4} When the officers arrived at the scene, they spoke to Ms. Davis and the neighbor. The officers then approached the home and asked appellant to come outside. After obtaining appellant's social security number and checking for outstanding warrants, the officers informed appellant that they had received a domestic disturbance *Page 3 
call. As they spoke, the officers noticed an odor of alcoholic beverage upon appellant's person. Appellant became agitated and began yelling at the complainant. The officers then informed appellant that they were placing him under arrest for domestic violence. By one officer's account, appellant took exception to this and "started to pull away" from the officer. The appellant testified that the officer "grabbed [his] arm and ripped [him] from [his] doorway and physically slammed [him] twenty-five feet away into a metal building." The officer testified that the wall was used to contain appellant as a means to prevent him from pulling away from the officers. The officer further testified that while against the wall the appellant managed to free one of his arms and attempted to turn to face the officer. At that point the officers took appellant to the ground and a struggle ensued that included appellant being "tazed" by one of the officers. According to Officer Wesner, it was he who used his tazer on Mr. Brown because [appellant] refused to "give [the officer] his arm." The complaining witnesses testified that she observed appellant fighting with the officers prior to his being placed in handcuffs.
 {¶ 5} As a result of his encounter with the police, appellant suffered several injuries to his face, head and extremities. The officers recorded several digital images of appellant's injuries and the scene prior to his transportation to the hospital. The injuries in question were treated at a local hospital prior to appellant's arrival at the jail.
 {¶ 6} Ms. Davis testified that she wrote appellant letters while he was in jail awaiting trial on the pending charges. She further testified that appellant urged her to lie when she came to court. However, he has since told her to tell the truth.
 {¶ 7} Appellant admitted that he yelled obscenities at Ms. Davis after the police informed him that he was being placed under arrest. He further admitted to gesturing at *Page 4 
her with his arm as the officers were attempting to place him in handcuffs. Appellant claimed the officers slammed him to the ground as they were walking him to the police cruiser because appellant was threatening to sue the officers. Appellant testified at length concerning the injuries he received.
 {¶ 8} On February 10, 2006, a motion to dismiss the resisting arrest charge was filed on behalf of appellant. Appellant alleged that the destruction of digital images of his injuries taken by the Newark Police Department before appellant was transported to the hospital effectively denied him his right to due process under the United States and Ohio Constitutions.
 {¶ 9} The motion to dismiss was heard on March 28, 2006 by the trial court.
 {¶ 10} Officer Mark Matesich of the Newark Police Department testified that his written statement submitted in the court file was correct and detailed the appellant's injuries. (T. March 28, 2006 at 21.) Officer Matesich stated that he took several photographs of the appellant and the scene on October 19, 2006 with a digital camera but gave the disk to Officer Wesner to transport back to the police station. (Id. at 20-24.)
 {¶ 11} Newark Police Department patrol Officer Jeremy Wesner also testified he looked for the photographs on the database in the police department's computer at length but was unable to locate them. Officer Wesner stated he did not erase any images intentionally and does not know what happened to the images in question. (Id. at 32.) Testimony was also elicited from Officer Wesner that his written statement confirmed all injuries suffered by the appellant. (Id.)
 {¶ 12} Both officers testified the appellant was taken to the hospital to be checked by medical personnel as a routine procedure because a tazer was used in this *Page 5 
case. Both officers acknowledged scrapes on the appellant's knees from falling on the ground when he tripped while being escorted to the police cruiser.
 {¶ 13} The trial court in overruling the motion to dismiss held that the photographic evidence was "potentially useful" and with that standard, the appellant must show the officers acted in "bad faith". (Judgment Entry filed March 30, 2006). The trial court found that appellant failed to establish bad faith and evidence that was inadvertently destroyed could be shown through testimony of several witnesses, appellant's medical records and the booking photograph admitted into evidence at the hearing. (Id.).
 {¶ 14} At the jury trial held on April 17, 2006. The jury returned verdicts of guilty on both the charge of domestic violence and resisting arrest. The trial court then continued the matter for a separate sentencing hearing. On May 5, 2006, the trial court sentenced Mr. Brown to one hundred and twenty (120) days on the domestic violence charge and sixty (60) days on the resisting arrest charge.
 {¶ 15} It is from these convictions and sentences that appellant appeals, raising the following assignments of error:
 {¶ 16} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO DISMISS DUE TO THE DESTRUCTION OF EXCULPATORY EVIDENCE.
 {¶ 17} "II. THE EVIDENCE PRESENTED BELOW IS INSUFFICIENT TO ESTABLISH EVERY ELEMENT OF THE DOMESTIC VIOLENCE OFFENSE CHARGED IN THE COMPLAINT." *Page 6 
 I. {¶ 18} In his first assignment of error appellant argues that the trial court erred when it failed to dismiss the resisting arrest charge for bad faith destruction of evidence. Specifically, the officers took several digital photographs of the appellant's injuries which occurred during the course of his arrest for the domestic violence charge. However, the officers were unable to locate the disk or memory card containing the digital images at the time of trial. Appellant did not make a pre-trial motion to preserve the evidence.
 {¶ 19} In Arizona v. Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333,102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. The United States Supreme Court stated the following:
 {¶ 20} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Maryland v. Brady (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can *Page 7 
show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58.
 {¶ 21} Thus, the Youngblood Court established two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. State v. Combs, 5th Dist. No. 03CA-C-12-073, 2004-Ohio-6574 at ¶ 16.
 {¶ 22} In the case at bar, the trial court held that the photographs were "potentially useful" to the defense. [Judgment Entry, filed March 30, 2006 at 2].
 {¶ 23} With regard to procedure, we note that the denial of a motion to dismiss on the ground that the government failed to preserve exculpatory evidence is reviewed de novo. State v. Johnson, Cuyahoga App. No. 82527, 2003-Ohio-4569; United States v. Wright, 260 F.3d 568,570 (6th Cir.2001); State v. Combs, 5th Dist. No. 03CA-C-12-073, 2004-Ohio-6574 at ¶ 25.
 {¶ 24} Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.State v. Johnson (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain *Page 8 
comparable evidence by other reasonably available means.' [citations omitted]" State v. Colby, Portage App. No. 2001 CR 0096, 2004-Ohio-343.State v. Combs, supra, at ¶ 23.
 {¶ 25} In the case at bar, appellant testified that he received a gash on his chin which required four stitches, bruising to his right cheek, abrasions on his chest, abrasions on his knee and a cut toe as a result of his arrest on the domestic violence charges. Appellant testified concerning his version of how he received these injuries alleging that the officers used excessive and unnecessary force to arrest him. The officers testified that appellant was belligerent and combative after the officers advised him that he was under arrest for domestic violence thereby necessitating the use of force in order to handcuff him. Photographs taken after-the-fact of the injuries appellant received would neither prove nor disprove that the officers used excessive and unnecessary force in effecting appellant's arrest. Additionally, appellant was in possession of his medical records from the incident. (T. March 28, 2006 at 12-13). A booking photograph showing the injuries to appellant's face was available to the defense prior to trial. (Id. at 9; 15). Appellant did not attempt to have either his medical records or the booking photographs admitted into evidence at trial.
 {¶ 26} We agree with the trial court that appellant has failed to demonstrate that there is a reasonable probability that, had the evidence been preserved the result of the proceeding would have been different. Further appellant has failed to demonstrate that he was unable to obtain comparable evidence by other reasonably available means. Accordingly, we find that the evidence whether in the digital or the final photographic form was not materially exculpatory but, rather, was potentially useful. *Page 9 
 {¶ 27} Because we find that the photographic evidence was potentially useful evidence, we must now consider whether appellant has met his burden to show that the State acted in bad faith. State v. Combs, supra, at ¶ 27. Upon due consideration, we find that appellant has not shown that the State acted in bad faith.
 {¶ 28} The United States Supreme Court, Youngblood, supra, at 56,109 S.Ct. at 336, fn. 2b discussed the following standard in determining bad faith: "[T]he presence or absence of bad faith * * * must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed."
 {¶ 29} Applying this standard to the facts of the case subjudice, we find an absence of bad faith on the part of the police.
 {¶ 30} The digital images were never reduced to a printed format. What were lost are the digital images which were contained on the camera's floppy disk or memory card. (T. March 28, 2006 at 30). The camera would normally be turned in at the end of the investigation and either a supervisor or records personnel would upload the digital images onto a database in the police department's computer. (Id.). The disk or memory card is then placed back into service. (Id. at 30-31). A search of the computer mainframe failed to locate the pictures taken of appellant. (Id.). There is no evidence to suggest that the officers deliberately erased or otherwise destroyed the digital images. The evidence indicates that the digital images were inadvertently lost. Further, it does not appear that appellant filed a formal motion to preserve the evidence.
 {¶ 31} Accordingly, we find that appellant has not made a sufficient showing of bad faith to find that appellant's due process rights were violated.
 {¶ 32} Appellant's first assignment of error is overruled. *Page 10 
 II. {¶ 33} In his second assignment of error, appellant contends the trial court erred by convicting him of domestic violence, where the element of "living as a spouse" was allegedly not proven. We disagree.
 {¶ 34} We initially note that appellant failed to move for a Crim. R. 29(A) judgment of acquittal. Accordingly, the State argues that appellant has waived this argument on appeal.
 {¶ 35} In the past, this court and numerous other Ohio appellate courts, relying primarily upon State v. Roe (1989), 41 Ohio St.3d 18,25, 535 N.E.2d 1351, and Dayton v. Rogers (1979), 60 Ohio St.2d 162,163, 14 O.O.3d 403, 398 N.E.2d 781, have held that if a criminal defendant fails to timely file a Crim. R. 29 motion for acquittal, the defendant waives any error, absent plain error, as to sufficiency of the evidence. See, e.g. State v. Fisher (May 3, 2006), 5th
Dist. No. 05 CAA 04 020; State v. Carrothers (Aug. 24, 2005), 5th Dist. No. 2004 AP 10 0067; State v. Alicie (April 13, 2005), 5th Dist. No. 04-CA-000020. "In two apparently little-recognized cases, however, the Ohio Supreme Court stated that a failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. See State v. Jones (2001), 91 Ohio St.3d 335, 346,744 N.E.2d 1163; State v. Carter (1992) 64 Ohio St.3d 218, 223, 594 N.E.2d 595. In both Jones and Carter, the Ohio Supreme Court stated that the defendant's `not guilty' plea preserves his right to object to the alleged insufficiency of the evidence. Id. Moreover, because `a conviction based on legally insufficient evidence constitutes a denial of due process,' State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387,678 N.E.2d 541, a conviction based upon *Page 11 
insufficient evidence would almost always amount to plain error".State v. Barringer, 11th Dist. No. 2004-P-0083,2006-Ohio-2649 at ¶ 59; State v. Coe(2003), 153 Ohio App.3d 44, 48-49,2003-Ohio-2732 at ¶ 19, 790 N.E.2d 1222, 1225-26.
 {¶ 36} Thus, for purposes of this review, we do not consider appellant to have waived his right to argue sufficiency of the evidence on appeal.
 {¶ 37} R.C. 2919.25(F) provides:
 {¶ 38} "(1) "Family or household member" means any of the following:
 {¶ 39} "(a) Any of the following who is residing or has resided with the offender:
 {¶ 40} "(i) A spouse, a person living as a spouse, or a former spouse of the offender;
 {¶ 41} "(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
 {¶ 42} At trial the complaining witness testified that she was living with appellant on the day of the offense. (T. April 17, 2006 at 38). She further testified that they have been together on and off for approximately eight years. (Id.). She continued to live with appellant after the incident. (Id.). She and appellant were married prior to trial. (Id. at 39).
 {¶ 43} R.C. 2919.25(F) encompasses a person who has cohabited with the offender within the past five years. City of Uhrichsville v. Losey, 5th Dist. No. 2005 AP 03 0028, 2005-Ohio-6546 at ¶ 15;State v. Brown, 5th Dist. No. 2004-CA-00010, 2004-Ohio-5226 at ¶ 41. Accordingly, the testimony in the case at bar establishes that the parties *Page 12 
were presently living together at the time of the offenses and further, that the parties had cohabitated within the past five years. We find the unrefuted testimony is sufficient to establish the complaining witness was appellant's family or household member in regard to appellant for purposes of the domestic violence statute at the time of the offense.
 {¶ 44} Appellant's second assignment of error is therefore overruled.
 {¶ 45} Accordingly, the judgment of the Licking County Municipal Court is affirmed.
 By Gwin, P.J., Farmer, J., and Edwards, J., concur *Page 13 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Licking County Municipal Court is affirmed. Costs to appellant. *Page 1