OPINION *Page 2 
{¶ 1} On July 2, 2004, appellant, Jason Thompson, was driving a vehicle which was involved in a two vehicle accident wherein the driver of the other vehicle, Cory Pettet, age 15 ½, was killed and his passenger, his mother, Amy Pettet, was injured. At the hospital, appellant consented to giving a blood sample.
 {¶ 2} On November 8, 2004, the Licking County Grand Jury indicted appellant on two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and (2) and one count of vehicular assault in violation of R.C. 2903.08(A)(2).
 {¶ 3} On January 18, 2005, appellant filed a motion to suppress, claiming the blood sample was not taken within the two hour time limit required under R.C. 4511.19(D)(1). A hearing was held on November 16, 2005. By judgment entry filed same date, the trial court denied the motion. Findings of fact and conclusions of law were filed on May 22, 2006.
 {¶ 4} On May 1, 2006, appellant filed a motion to dismiss because the blood sample had not been preserved for independent analysis. By judgment entry filed same date, the trial court prohibited the admission of the blood test results, finding the destruction of the blood sample was done in bad faith. Appellee, the state of Ohio, appealed. This court reversed the decision and remanded the matter to the trial court to conduct an evidentiary hearing on the issue of bad faith. See, State v.Thompson, Licking App. No. 06CA47, 2006-Ohio-6798.
 {¶ 5} Upon remand, the trial court conducted a hearing on February 21, 2007. By judgment entry filed May 6, 2007, the trial court found no bad faith and denied appellant's motion to dismiss. *Page 3 
 {¶ 6} A bench trial commenced on October 29, 2007. By judgment entry filed October 31, 2007, the trial court found appellant guilty as charged. By judgment entry filed December 19, 2007, the trial court sentenced appellant to an aggregate term of seven years and three months in prison. Appellant was ordered to pay court costs and restitution.
 {¶ 7} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 8} "THE TRIAL COURT DID ERR BY FAILING TO GRANT DEFENDANT'S MOTION TO DISMISS."
 II {¶ 9} "THE CONVICTIONS ARE SUPPORTED BY INSUFFICIENT EVIDENCE AND/OR ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 III {¶ 10} "THE ACTIONS OF THE PROSECUTION AND THE TRIAL COURT VIOLATED THE OHIO CONSTITUTION."
 IV {¶ 11} "THE TRIAL COURT DID ERR BY ORDERING THE DEFENDANT TO PAY RESTITUTION IN AN UNSPECIFIED AMOUNT."
 I {¶ 12} Appellant claims the trial court erred in finding the destruction of appellant's blood sample was not done in bad faith. We disagree. *Page 4 
 {¶ 13} In reviewing the state's appeal on this issue, this court remanded the matter to the trial court for evidentiary hearing:
 {¶ 14} "The trial court did not respond to appellant's request and ruled the Ohio State Highway Patrol `blatantly disregarded' the trial court's preservation order. Although we concur with the trial court's analysis that the trial court specifically ordered the blood sample be maintained by the Ohio State Highway Patrol in a refrigerated environment, we nonetheless find appellant's request for an evidentiary hearing should have been granted. The matter is reversed and remanded to the trial court to conduct an evidentiary hearing on the sole issue of bad faith." State v. Thompson, Licking App. No. 06CA47, 2006-Ohio-6798, ¶ 17.
 {¶ 15} In State v. Combs, Delaware App. No. 03CA-C-12-073,2004-Ohio-6574, ¶ 24, this court stated, "The term `bad faith' generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscience wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."
 {¶ 16} The trier of fact is given great deference as to the facts and the conclusions to be drawn from the facts. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 17} Basically the facts are undisputed. Following a suppression hearing wherein the blood sample was marked as evidence (State's Exhibit 1), the parties filed an agreed entry on November 21, 2005 ordering the sample to be "released into the custody of Brandon Werry of the Ohio State Highway Patrol Crime Lab, so that it might be maintained in a refrigerated controlled environment." On April 25, 2006, appellant *Page 5 
filed a motion for the release of the blood sample for independent testing. By entry filed April 26, 2006, the trial court agreed. However, unbeknownst to the parties, the blood sample had been destroyed on February 14, 2006 pursuant to the Ohio State Highway Patrol's protocol for the retention of evidence. February 21, 2007 T. at 10-11. On said date, 5,495 samples were destroyed and three were not because of court orders. Id. at 15-16. Trooper Werry never saw a copy of the agreed entry for preservation. Id. at 13, 29. There was no evidence of anything other than a casual conversation as to subpoenas and trial dates between the prosecutor's office and Trooper Werry. Id. at 32.
 {¶ 18} The prosecutor testified refrigeration was the reason for returning the sample to Trooper Werry. Id. at 41-42. The prosecutor admitted he did not recall sending the preservation order, nor did his file reflect that it had been sent. Id. at 44. It did not occur to the prosecutor to send a copy of the preservation order to Trooper Werry since the trial date was scheduled six weeks after the suppression hearing, but then a continuance at the state's request changed things and the prosecutor had "no anticipation that that was going to be destroyed." Id. at 44-45. The prosecutor was not informed that the blood sample had been destroyed until late April of 2006. Id. at 47.
 {¶ 19} At the conclusion of the hearing, the trial court reached the following conclusions:
 {¶ 20} "The Court finds that there was, indeed, an order of this court to maintain the blood sample, and that that entry was filed. However, the Court would note that the testimony is clear that that was not communicated to the Ohio State Patrol. Whether that's negligence or bad judgment, the Court does make a finding that while it may be either or both, that is not a showing of bad faith. The testimony in this case is that the *Page 6 
individual who did destroy the sample was not an individual who was aware of the pending case, who was going to be the witness in the case, namely, Mr. Werry.
 {¶ 21} "It's further of interest that there was a — I guess a mass destruction of blood samples except the court ordered blood samples where there was a court order requiring the preservation of those samples. I believe the testimony was that there were three, three that the Ohio State Patrol had a notice of. This sample was destroyed along with the other because they did not receive notice to preserve. With that, the Court finds that there is not a sufficient showing of bad faith in this case, that the May 1 entry is reversed by this court, and the blood test results may be used." Id. at 72-73.
 {¶ 22} From the evidence presented, we concur with the trial court's findings wherein there may have been evidence of negligence, but there was no actual evidence of bad faith, malice or evil motivation.
 {¶ 23} Assignment of Error I is denied.
 II {¶ 24} Appellant claims his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 25} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new *Page 7 
trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 26} Appellant was convicted of two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and (2) and one count of vehicular assault in violation of R.C. 2903.08(A)(2) which state the following:
 {¶ 27} "[R.C. 2903.06(A)(1)(a) and (2)] (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
 {¶ 28} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;
 {¶ 29} "(2) In one of the following ways:
 {¶ 30} "(a) Recklessly.
 {¶ 31} "[R.C. 2903.08(A)(2)] (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:
 {¶ 32} "(2) In one of the following ways:
 {¶ 33} "(b) Recklessly."
 {¶ 34} Appellant does not specify what elements were not proved beyond a reasonable doubt; he merely argues the record does not support his convictions. From *Page 8 
our reading of the transcript, we find no evidence that appellant was not the operator of the motor vehicle involved in the accident. T at 210.
 {¶ 35} The accident occurred at the intersection of Miller and Mink. Miller Road has stop signs so that "vehicles traveling east on Miller and west on Miller [have] to stop at Mink Street." T. at 53. During closing arguments, defense counsel argued there was doubt as to whether or not it was appellant's vehicle that failed to stop at the stop sign at the intersection. T. at 418. The only witness who gave any support to this argument was a witness to the accident, Robert Bush. Mr. Bush testified he saw a maroon red truck that he believed was appellant's on Mink Road just prior to hearing the accident. T. at 384-385. On cross-examination, Mr. Bush admitted the vehicle could have been someone else's truck. T. at 394.
 {¶ 36} Trooper Werry testified appellant stated "he was on the other side of Miller Road on the west side and coming to the east." T. at 107. Witnesses testified the vehicle carrying the Pettets was traveling on Mink Street. T. at 195-197, 200, 208. The state's accident reconstructionist, Jennifer Hickok, testified the point of impact and the relative damages indicated appellant's vehicle violated the stop sign. T. at 305-310. This conclusion was collaborated by independent witnesses to the accident traveling on Mink Street who saw a red truck flash before them across the intersection. T. at 168-169, 208-209, 214.
 {¶ 37} Appellant also disputed whether or not he was intoxicated as there was no proof beyond a reasonable doubt that his driving was impaired by alcohol. We note because the blood sample was drawn outside the two-hour time frame mandated by statute, this was not a per se violation case. Therefore, the state was required to *Page 9 
establish that appellant had consumed some alcohol regardless of quantity that appreciably impaired his ability to operate a motor vehicle.
 {¶ 38} Trooper Chad Maines testified appellant was driving and he admitted to consuming alcohol prior to the crash. T. at 43. Todd Berona, a paramedic on the scene, testified he personally observed appellant. T. at 106. Mr. Berona noted an odor of alcohol about appellant's person, and appellant told him he had consumed about four beers. T. at 106-107. Immediately after the accident, appellant admitted to a lay witness to having consumed alcohol. T. at 185.
 {¶ 39} A forensic toxicologist, Laureen Marinetti, opined by extrapolation backwards that appellant's blood alcohol at the time of the accident was as high as .125. T. at 273. This amount would impair judgment and reaction time. T. at 277.
 {¶ 40} Upon review, we find sufficient credible evidence to establish appellant violated the stop sign at the intersection and was impaired in the operation of his motor vehicle. We find no manifest miscarriage of justice.
 {¶ 41} Assignment of Error II is denied.
 III {¶ 42} Appellant claims that the prosecutor's drafting of the bad faith ruling violated the Ohio Constitution. We disagree.
 {¶ 43} As we noted in Assignment of Error I, the trial court specifically stated on the record the reasons for its decision. We have examined the statements vis- À -vis the judgment entry and find no violation of the Ohio Constitution.
 {¶ 44} Assignment of Error III is denied. *Page 10 
 IV {¶ 45} Appellant claims the trial court erred not ordering a specific amount in restitution. Appellee concedes this matter. The issue of restitution is remanded to the trial court for determination on a specified amount.
 {¶ 46} Assignment of Error IV is granted.
 {¶ 47} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed, and the matter is remanded to said court for determination of a specified amount on the restitution order. By Farmer, J. Hoffman, P.J. and Delaney, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed, and the matter is remanded to said court for determination of a specified amount on the restitution order. *Page 1