OPINION *Page 2 
{¶ 1} Defendant-appellant Richard L. Piper appeals his conviction in the Delaware Municipal Court. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On December 10, 2006, at approximately 3:10 a.m., Sergeant Shellito of the Delaware City Police Department passed a white pickup truck traveling southbound on Sandusky Street within the city limits of Delaware, Ohio. Sgt. Shellito ran the vehicles registration through his cruiser's MDT, and discovered the vehicle was registered in Appellant's name. The BMV database further indicated Appellant's drivers license was under a court suspension from the Delaware Municipal Court.
 {¶ 3} Sgt. Shellito followed the vehicle southbound on Union Street, a dead end street. Upon approaching the parked vehicle, Sgt. Shellito observed Appellant exit the driver's side of the vehicle. Appellant proceeded to identify himself acknowledging he owned the vehicle and was under suspension.
 {¶ 4} On December 10, 2006, Appellant was charged with one count of driving under a court suspension, in violation of R.C. 4510.11(A) and one count of driving with no operator's license, in violation of R.C.4510.12(A)(1). The complaint was personally served on Appellant on December 10, 2006.
 {¶ 5} On March 1, 2007, Appellant filed a motion to preserve and produce all audio and video recordings. On March 6, 2007, the trial court granted the motion.
 {¶ 6} The matter proceeded to trial on March 20, 2007 in the Delaware Municipal Court. At trial, Appellant moved the trial court in limine requesting the trial court dismiss the case based upon the State's failure to preserve exculpatory evidence. *Page 3 
The trial court denied the motion and proceeded with trial. The jury found Appellant guilty of the charges, and the trial court sentenced Appellant accordingly.
 {¶ 7} Appellant now appeals, assigning as sole error:
 {¶ 8} "I. The trial court erred with prejudice against the defendant/appellant by ruling that the destroyed video recording of defendant's stop was merely "potentially useful" evidence instead of "materially exculpatory" evidence and thus placing the burden of proof on defendant to demonstrate "bad faith" by the state."
 I {¶ 9} In Arizona v. Youngblood (1988), 488 U.S. 51, 109 S.Ct. 333,102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by a state's failure to preserve evidence. The court stated the following:
 {¶ 10} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. * * * We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e ., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for *Page 4 
exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58, 109 S.Ct. 333, 102 L.Ed.2d 281.
 {¶ 11} Thus, the Youngblood court established two tests: one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." If the state fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. However, evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. State v. Johnston (1988), 39 Ohio St .3d 48,529 N.E.2d 898, paragraph five of the syllabus. Stated in other words, "To be materially exculpatory, `evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" State v.Colby, Portage App. No. 2002-P-0061, 2004-Ohio-343, quotingCalifornia v. Trombetta (1984), 467 U.S. 479, 489, 104 S.Ct. 2528,81 L.Ed.2d 413. This court has consistently held that the burden of proof is on the defendant to show the exculpatory nature of the destroyed evidence. See State v. Birkhold (Apr. 22, 2002), Licking App. No. 01 CA104, State v. Hill (Mar. 8, 1999), Stark App. No. 1998CA0083, State v.Blackshear (June 19, 1989), Stark App. No. CA-7638.
 {¶ 12} If, on the other hand, the state fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. The *Page 5 
term "bad faith" generally implies something more than bad judgment or negligence. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." State v. Franklin, Montgomery App. No. 19041, 2002-Ohio-2370.
 {¶ 13} Appellant argues the State destroyed the videotape of the incident taken from Sgt. Shellito's cruiser which contained materially exculpatory evidence. However, Appellant has not demonstrated the exculpatory value of the evidence, nor has he demonstrated he would be unable to obtain comparable evidence by other available means. Rather, Sgt. Shellito testified at the hearing relative to his observations upon approaching the vehicle, and the Appellant's co-passengers in the vehicle were available to testify at trial. Therefore, we find, as did the trial court, the evidence on the videotape is potentially useful, rather than, materially exculpatory, despite Appellant's self-serving conclusory assertion to the contrary. Accordingly, Appellant must demonstrate the State acted in bad faith in failing to preserve and produce the evidence.
 {¶ 14} At trial, Charles Doeble, the police technician for the Delaware Police Department testified:
 {¶ 15} "Mango: Generally, you're obviously aware of the cameras in the police cruisers, correct?
 {¶ 16} "Doeble: Yes, I'm the one responsible to put in everything, yes.
 {¶ 17} "Mango: How do they record? *Page 6 
 {¶ 18} "DOEBLE: It's a digital video recorder it's a computer in the back of the cruiser itself the box is hooked to the main frame or the CPU our MBP's (? 3.2) in the front they record whenever the ignition is on. It usually takes about 3, 4, or 5 minutes to get started but because the camera has to sink with the box and the computer at the same time but, after that it's recording.
 {¶ 19} "MANGO: Because it's digitally recording so there's obviously no cassette tape or anything of that nature?
 {¶ 20} "DOEBLE: That's correct sir.
 {¶ 21} "MANGO: Does it digitally save to the hard drive?
 {¶ 22} "DOEBLE: It's saved to the drive in the back, there are two computers running. Your digital video recorder is a computer itself, this one's 156 gigabits computer in it, and it saves to that. If that computer runs 24 hours a day, if that cruiser's been running for 24 hours the maximum you can have before it rewrites itself is 8 days . . . that's the maximum if it's running a full 24 hours.
 {¶ 23} "MANGO: Is it common for cruisers to be used for (UNCLEAR 4.4)
 {¶ 24} "DOEBLE: Oh, yes they're very common.
 {¶ 25} "MANGO: So each officer has a cruiser.
 {¶ 26} "DOEBLE: Well each officer on that shift has a cruiser, and then each shift has . . . I don't know which one we're talking about . . . was it 105 or 108 or . . .
 {¶ 27} "MANGO: 101
 {¶ 28} "DOEBLE: Yes, that's a supervisor's cruiser, that's constantly driven.
 {¶ 29} "MANGO: So if there is supposed to be evidence on that drive anything that the officer can see out of his front windshield would be recorded, correct? *Page 7 
 {¶ 30} "DOEBLE: I wouldn't call it evidence, but there's always a video there of it, yes.
 {¶ 31} "MANGO: And that evidence then, or digitally recorded information is only going to be kept for 8 days?
 {¶ 32} "DOEBLE: It will kept at maximum for 8 days now the officer can download that also and then save it to a hard drive which then we keep it forever, and I think our policy says 10 years.
 {¶ 33} "MANGO: So an officer would have to proactively take a step prior to the 8 days expiring to get that information?
 {¶ 34} "DOEBLE: Yes, sir.
 {¶ 35} "MANGO: And did you say download it to the hard drive. Where was that?
 {¶ 36} "DOEBLE: That's the MDT. The [sic] what happens is, the Officer would save that clip that he wants saved and then he usually sends me an e-mail and what I do is go out. I save it on the mainframe of that computer plus I use the main, the main copy is put on a hidden drive in the City that we use for evidence. The reason why it's a hidden drive is because I can access it anywhere in the City, just in case something would happen at the Police Station, it's not kept here, on site.
 {¶ 37} "MANGO: To the best of your knowledge, if an Officer does not take the step, or someone else takes the step to retrieve that information within the 8 days, is it retrievable after?
 {¶ 38} "DOEBLE: If it's rewritten over itself, no it is not retrievable.
 {¶ 39} "MANGO: Is there any policy when it's or physical limits as to the digital information that they can . . . *Page 8 
 {¶ 40} "DOEBLE: No, there's no policy limits on it. Uh, we have a, at that time, let's say, during that period of time, there's this period of that we didn't have . . . bytes on our server. So, I mean. Storage wise, I couldn't store an extreme amount.
 {¶ 41} "* * *
 {¶ 42} "MANGO: If there is a Discovery Demand or request or something, urn, would that go to you?
 {¶ 43} "DOEBLE: Yes, it goes directly to me.
 {¶ 44} "* * *
 {¶ 45} "SUNDERMAN: That's my next question, was there any kind of a standard policy, written policy,
 {¶ 46} "DOEBLE: Nope.
 {¶ 47} "SUNDERMAN: That the Police Department had prior to February 15th as to what they, what they would take off and preserve and what was taped over?
 {¶ 48} "DOEBLE: No, it was just kind of a pass the word policy type thing. Pass the word that OVI's especially was about the only thing they really did save. There's been a few Officers who do save other stuff, but that was on their own. That wasn't, you know, the main thing was an OVI.
 {¶ 49} "* * *
 {¶ 50} "SUNDERMAN: In this case, did you receive an order to preserve this particular uh, I guess the video depiction of this particular incident that we're here for today?
 {¶ 51} "DOEBLE: I'm sorry, Sir, I don't know why I'm here for today? I was asked to be an expert witness. *Page 9 
 {¶ 52} "SUNDERMAN: This is, this is a case that happened on December 10th of 2006 involving the State of Ohio vs. Richard L. Piper.
 {¶ 53} "DOEBLE: OK, the date was 12/10, Cruiser 101?
 {¶ 54} "SUNDERMAN: Cruiser 101.
 {¶ 55} "DOEBLE: Ok, no we did not have that.
 {¶ 56} "SUNDERMAN: The notice would have come to you?
 {¶ 57} "DOEBLE: Oh, yes sir, everything has to come to me.
 {¶ 58} "SUNDERMAN: Alright, but you're telling me that unless a specific Officer has specifically taken that off the video and put it on the hard drive, it wouldn't be preserved at this point, in any event.
 {¶ 59} "DOEBLE: No, sir, it would not be."
 {¶ 60} TR 11:40:15.
 {¶ 61} Upon review of the record and the evidence, approximately three months had passed before Appellant requested the digital information be preserved. Further, we note the evidence presented at trial demonstrates Sgt. Shellito observed Appellant exit the driver's side of the vehicle, at which time Appellant admitted he was under suspension. Appellant and his co-passengers testified at trial he was not operating the vehicle. It is for the trier of fact to weight the evidence and judge the credibility of witnesses, and we will not substitute out judgment for that of the trier of fact.
 {¶ 62} Upon full review of the record, we are unpersuaded the trial court erred in failing to find bad-faith destruction of evidence by the State. Appellant has not demonstrated the State had any motive to "destroy" the tape. We, therefore, hold the trial court did not err in denying appellant's motion in limine to dismiss the case. *Page 10 
 {¶ 63} Appellant's assignment of error is overruled.
 Hoffman, P.J., Farmer, J., and Delaney, J., concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, Appellant's conviction in the Delaware Municipal Court is affirmed. Costs assessed to Appellant. *Page 1