OPINION
{¶ 1} Defendant-appellant, Deauntay McKinney ("appellant"), appeals the judgment of the Franklin County Court of Common Pleas, which convicted appellant for false billings to the Ohio Medicaid program. For the following reasons, we affirm.
 {¶ 2} The Franklin County Grand Jury indicted appellant on one count of Medicaid fraud in violation of R.C. 2913.40 and one count of theft in violation of R.C. 2913.02, both as third-degree felonies. The counts concern appellant, a nurse, falsely *Page 2 
billing the Ohio Medicaid program $108,848.98 while she cared for two disabled children: Dariq Hawkins ("Dariq") and Deshawn Woods ("Deshawn"). In particular, the counts pertain to appellant billing for services to Dariq that she did not provide. The counts also pertain to appellant improperly billing for Dariq's care at the individual rate, rather than the required lower group rate, when she cared for Dariq and Deshawn together at programs sponsored by the Board of Mental Retardation and Developmental Disabilities ("MRDD"). The group rate pays 75 percent of the individual rate and applies when a nurse simultaneously cares for two or more individuals. The indictment aggregated appellant's multiple instances of false billings into one count of Medicaid fraud and, alternatively, one count of theft.
 {¶ 3} Appellant pleaded not guilty to the charges and exercised her right to a jury trial. During opening statements, appellant's trial counsel asserted that appellant did not engage in false billings to the Ohio Medicaid program.
 {¶ 4} At trial, Deshawn's mother, Valarie Lynn Woods, testified as follows on behalf of plaintiff-appellee, the State of Ohio. Appellant cared for Deshawn between 8:00 a.m. and 4:30 p.m. on school days, school holidays, and summer-break weekdays. Specifically, on school days, appellant (1) accompanied Deshawn on a school bus to the MRDD Northeast School in Gahanna, Ohio ("Northeast"), (2) cared for Deshawn while at Northeast, and (3) accompanied Deshawn home from Northeast for some additional care. Appellant also cared for Deshawn at the MRDD summer program at West Central School in Columbus, Ohio ("summer program"). Appellant did not care for Deshawn during the evening or on weekends. *Page 3 
 {¶ 5} Dariq's mother, Sarah Hawkins, testified as follows on behalf of appellee. Mrs. Hawkins met appellant when Dariq started to attend Northeast. Appellant offered to care for Dariq at Northeast while she also cared for Deshawn. Mrs. Hawkins agreed, and appellant cared for Dariq at Northeast from 9:30 a.m. to 3:15 p.m. Appellant did not care for Dariq before or after school or during school holidays. Appellant also cared for Dariq when he attended the 2003 summer program for two weeks, but she did not care for Dariq the balance of that summer. Dariq did not attend the summer program in 2004, and appellant did not care for Dariq during that summer.
 {¶ 6} Dariq and his family moved outside of Franklin County and the MRDD district in the summer of 2005. Mrs. Hawkins had called the summer program administrators to find out if Dariq could attend in the summer of 2005, but the administrators told her that Dariq could not attend because he had moved from the district. Thus, Dariq did not attend the 2005 summer program, and appellant did not care for Dariq that summer. In fact, appellant did not care for Dariq after June 10, 2005, the last day of that school year.
 {¶ 7} Before appellant's nursing relationship with Dariq ended, Dariq and his siblings stayed at appellant's home on approximately ten weekends. During these visits, the children would usually stay one weekend night, but for fewer than five of the weekends, the children stayed two nights. After one of the initial Friday overnight visits, appellant told Mrs. Hawkins that she was billing for Sunday, even though she did not care for Dariq that day. Appellant explained to Mrs. Hawkins that "`Medicaid will only pay for twelve-hour shifts and [Dariq] was here for longer than 12 hours. So in order to *Page 4 
get my money, I have to bill on another day.' " (Vol. I Tr. 72.) Mrs. Hawkins told appellant not to bill for dates that she did not work.
 {¶ 8} In August 2005, appellant called Mrs. Hawkins to ask for work. Because appellant sounded desperate, Mrs. Hawkins decided to investigate appellant's billings for Dariq's care. Mrs. Hawkins obtained a statement of appellant's billings, and the statement revealed that appellant had falsely billed for Dariq's care during the 2005 summer break.
 {¶ 9} Dariq's father, Darrick Hawkins, also testified on appellee's behalf. Mr. Hawkins reiterated Mrs. Hawkins' testimony about when appellant cared for Dariq. Mr. Hawkins also testified that in the summer of 2002, Dariq stayed with appellant for three or four days while Mr. and Mrs. Hawkins were out of town. In addition, Mr. Hawkins testified that one day in 2004, appellant asked him to sign some blank time sheets, and appellant told Mr. Hawkins not to include the date with his signature. Mr. Hawkins testified that he signed the blank time sheets because he trusted appellant. At trial, Mr. Hawkins examined the time sheets, which were labeled Exhibits T2, T3, and T4. According to Mr. Hawkins, the time sheets had been filled out and now inaccurately indicated that appellant cared for Dariq on dates that she did not actually work.
 {¶ 10} Next, West Central School principal Barbara Michael Jones testified on appellee's behalf that she found no record of Dariq attending the summer program in 2004 or 2005, but Jones confirmed that Dariq attended the summer program for two weeks in 2003. On cross-examination, appellant's trial counsel provided a school attendance record, Exhibit 1, which stated that Dariq attended the summer program in 2005. Jones stated that she had not seen the record before appellant's trial counsel *Page 5 
presented it to her on the witness stand. On re-direct examination, Jones testified that Exhibit 1 indicated that Dariq moved out of the MRDD district in the summer of 2005, and, therefore, Dariq would not have been eligible for the 2005 summer program.
 {¶ 11} Ohio Attorney General special agent Joe Joseph testified as follows on appellee's behalf. In March 2006, he and agent Shari Moore interviewed appellant about her billings to the Ohio Medicaid program. Initially, appellant stated that she worked all of the hours that she billed, but later admitted to billing for services not rendered. Appellant also admitted that she fabricated nursing notes for the summer of 2005. Joseph and Moore interviewed appellant in the presence of her trial counsel in May 2006. During that interview, appellant stated that she worked all of the hours that she billed.
 {¶ 12} Moore also testified. Moore reiterated appellant's admissions during the March 2006 interview. Moore also noted that, in the March 2006 interview, appellant admitted that she did not always bill the required reduced group rate when she simultaneously cared for Dariq and Deshawn. Moore ultimately subpoenaed records from appellant, and appellant provided time sheets, i.e., Exhibits T2, T3, and T4, and nursing notes, both for the summer of 2005.
 {¶ 13} Moore calculated how much money appellant received by billing for services to Dariq that she did not provide. Moore also calculated how much money appellant received when not billing for Dariq's care at the required reduced group rate when she simultaneously cared for Dariq and Deshawn. Moore documented her calculations in a spreadsheet labeled Exhibit Z1. *Page 6 
 {¶ 14} In determining how much appellant billed for services to Dariq that she did not provide, Moore examined appellant's billings for Dariq from September 2002 to August 2005. She also considered that Mr. and Mrs. Hawkins told her that appellant cared for Dariq (1) at Northeast, (2) during part of the 2003 summer program, (3) for ten weekends, and (4) for one full week while Mr. and Mrs. Hawkins were on vacation in the summer of either 2003 or 2004. Moore also considered school attendance records showing that Dariq attended the summer program for two weeks in 2003. Moore recognized that there were only six hours in the school day and that Mr. and Mrs. Hawkins contended that appellant did not care for their son after June 2005.
 {¶ 15} Thus, Moore gave appellant credit for Dariq's care on school days, but not school holidays between September 2002 and June 2005, and she gave appellant credit for only six hours in each school day. Moore also gave appellant credit for days that Dariq attended the 2003 summer program, but not for the balance of that summer. For the summer of 2004, Moore gave appellant credit for one week to account for Mr. and Mrs. Hawkins' contention that appellant cared for Dariq for one week in either the summer of 2003 or 2004. This week represents the highest paid week for the summers of 2003 and 2004. As for weekend visits, although Mr. and Mrs. Hawkins remembered only two weekends when appellant cared for Dariq, Moore gave appellant credit for the ten full weekends. Lastly, Moore did not give appellant credit for billings after the school year ended in 2005. Moore then calculated that appellant received $89,827.95 by billing for services to Dariq that she did not provide.
 {¶ 16} Next, Moore calculated the money that appellant received when not billing for Dariq's care at the required reduced group rate when she simultaneously cared for *Page 7 
Dariq and Deshawn. Moore applied the group rate against Dariq's care on days that appellant billed for both Deshawn and Dariq when Northeast was in session. Moore also applied the group rate against Dariq's care to days that Dariq attended the 2003 summer program when those dates matched appellant's billing for Deshawn's care. Moore did not calculate the group rate against Deshawn's care because appellant provided some sole care to Deshawn on school days, and Moore could not determine what part of the day appellant billed for solely taking care of Deshawn. Moore calculated that appellant improperly received $19,021.03 from not applying the required reduced group rate on billings for Dariq's care. Moore then concluded that appellant obtained a total of $108,848.98 in false billings.
 {¶ 17} On cross-examination, Moore testified as follows. Moore admitted that, when she drafted Exhibit Z1, she accepted as true Mr. and Mrs. Hawkins' claims about when appellant cared for Dariq. Thus, Moore accepted Mr. and Mrs. Hawkins' contention that, on days that Northeast was in session, appellant only cared for Dariq at school and not before or after school. Moore then determined that appellant cared for both Dariq and Deshawn at Northeast when she billed for both patients on school days. Accordingly, Moore concluded that appellant needed to apply the group rate for Dariq's care when she billed for both patients on school days. Conversely, Moore did not "completely rely" on Dariq's school attendance records because she did not know how accurate those records were. (Vol. II Tr. 204.)
 {¶ 18} On cross-examination, appellant's counsel showed Moore some of appellant's nursing notes from 2003. Appellant had not provided Moore with the nursing notes when Moore created Exhibit Z1. The nursing notes depict appellant caring for *Page 8 
Dariq during a full week from Tuesday, August 19, 2003, to Tuesday, August 26, 2003. Moore confirmed on cross-examination that she did not give appellant credit for this week, but did give appellant credit for the highest paid week in June 2004 to account for Mr. and Mrs. Hawkins' claim that appellant cared for Dariq for one week in the summer of 2003 or 2004. The notes also depict appellant caring for Dariq on several weekdays in August during the 2003 summer break. Moore stated on cross-examination that she did not give appellant credit for these dates. Moore explained that Mr. and Mrs. Hawkins contended that, except for the vacation they took in either 2003 or 2004, appellant did not care for Dariq during the 2003 summer break after he stopped attending the summer program in early July 2003. Next, the nursing notes depict appellant caring for Dariq on eleven weekends in 2003. Moore confirmed on cross-examination that she did not give appellant credit for any of these dates, but explained that she did give appellant credit for working ten weekends in accordance with Mr. and Mrs. Hawkins' claims.
 {¶ 19} On re-direct examination, Moore read notes from a September 2002 telephone call that appellant had with a staff member of the Ohio Medicaid administrator. Appellant wanted to know how to properly bill for a client that she was going to care for on three consecutive days. The administrator told appellant that, in general, she was not allowed to bill for more than 12 hours in a shift.
 {¶ 20} Before appellee rested its case, appellant's trial counsel objected to the admission of Exhibit Z1. Appellant's trial counsel argued that Moore's conclusions in the exhibit are inaccurate. The trial court concluded that any issues concerning the content of Exhibit Z1 "are subject to argument and ultimately for the jury's conclusions." *Page 9 
(Vol. II Tr. 248.) Thus, the trial court overruled appellant's objection and admitted Exhibit Z1 into evidence. The trial court also admitted billing records and documents indicating how much money appellant received from her billings.
 {¶ 21} Appellant's neighbor, Hazel McLin testified on appellant's behalf. McLin stated that she would sometimes see Dariq at appellant's home on weekdays. McLin also testified that she saw Dariq at appellant's home on nine or 12 weekends during the 2002 to 2004 time period.
 {¶ 22} Appellant also called Dariq's pediatrician, Dr. Sandra Boyle, to testify. After Dr. Boyle took the witness stand, the court called a sidebar conference with the attorneys. During the conference, the court expressed concern about the doctor-patient privilege between Dariq and Dr. Boyle. Appellant's counsel alleviated the court's concerns by explaining that he wanted Dr. Boyle to help the "jury to understand how this Medicaid system works and where the physician fits into the picture and where the nurse fits in and who makes up the care plans." (Vol. II Tr. 278.) The conference ended, and appellant's trial counsel sought to resume questioning. Dr. Boyle stated that she heard the sidebar conference, however, and did not want to answer questions about Dariq. Appellant's counsel told the doctor that he only wanted to ask general questions about the type of care a patient like Dariq might need. Appellant's counsel then continued to elicit testimony concerning (1) the care necessary for someone in Dariq's condition, and (2) the manner in which Medicaid plans are created.
 {¶ 23} Next, appellant's husband, Brian McKinney, testified on appellant's behalf. Mr. McKinney testified that he first met Dariq in September 2002 at the child's school. At trial, Mr. McKinney once referred to Dariq's school as "North Central School" and *Page 10 
another time as "Northwest." (Vol. II Tr. 290, 297.) Mr. McKinney could not name the street where Dariq's school was located. Mr. McKinney then testified as follows about the work schedule appellant maintained when she cared for Dariq. Appellant arrived at Dariq's home around 5:00 a.m. to give Dariq morning care, and Mr. McKinney would often accompany appellant at that time. Next, appellant and Mr. McKinney went to Deshawn's home. Dariq sometimes accompanied appellant and Mr. McKinney to Deshawn's home before school and other times Mr. and Mrs. Hawkins took Dariq to school. On days that Dariq accompanied appellant and Mr. McKinney to Deshawn's home, Mr. McKinney would drive Dariq to school while appellant cared for Deshawn and rode on the bus with Deshawn to school. After school, Mr. McKinney would sometimes drive Dariq home. At other times, Dariq would take the bus home or Mr. and Mrs. Hawkins would take him. Meanwhile, appellant provided additional care for Deshawn at his home until his night nurse arrived. Afterward, around 5 p.m., appellant went to Dariq's home to give him evening care. Mr. McKinney also testified that, between 2002 and 2005, Dariq and his siblings stayed with appellant and Mr. McKinney on approximately 800 days. In addition, Mr. McKinney testified that he was aware of appellant's billings and that appellant did not bill for all of the hours she cared for Dariq. He also testified that he did not bill the Ohio Medicaid program for the time he assisted appellant.
 {¶ 24} Northeast principal Carol Rantala also testified on appellant's behalf. Rantala testified that Dariq was enrolled in Northeast in 2002 when she started working at the school. Rantala indicated that Dariq continued to attend Northeast until the end of the school year in 2005, before Dariq and his family moved. Appellant's trial counsel *Page 11 
then showed Rantala Exhibit 1, which Rantala confirmed contained Dariq's Northeast attendance records. She testified, however, that she did not personally recall portions of Exhibit 1 that indicated Dariq's attendance at the summer program, a program that takes place at another school and with different administrators. On cross-examination, Rantala testified that one section of Exhibit 1 shows that Dariq did not attend after June 10, 2005, and contains a note stating, " 7/05 to Licking County.' " (Vol. II Tr. 342.) Rantala stated that Dariq would not have been eligible for the summer program after he moved from Franklin County.
 {¶ 25} Lastly, appellant testified on her own behalf. Appellant testified that Mr. Hawkins signed the time sheets in Exhibits T2, T3, and T4 after she filled out all the information. Appellant denied telling Moore and Joseph that she fabricated nursing notes. Appellant also reiterated her husband's testimony regarding the schedule that she maintained when she cared for Dariq on school days. Appellant testified that she did not bill for time that she did not work and that she often did not bill for time when she did care for Dariq. Appellant explained that, on school days, she billed for the mornings and evenings she cared for Dariq, but she did not bill for the time she simultaneously cared for him and Deshawn at school. Rather, she only billed for Deshawn when she cared for both patients at school. Appellant testified that she cared for Dariq on days he was absent from school. She also testified that she cared for Dariq at her home on approximately 100 weekends between 2002 and 2005. Appellant's trial counsel asked appellant "didn't Mrs. Hawkins testify that her kids were never at your house?" (Vol. II Tr. 360.) Appellant replied, "Yes, she did." (Vol. II Tr. 360.) *Page 12 
 {¶ 26} Appellant testified that she never billed more than 12 hours within a 24-hour period. Likewise, appellant explained that she would often bill for Dariq in separate increments in a day because she would take breaks while she cared for the patient. According to appellant, "[e]ach time that you take a two-hour lapse in service, you can bill again." (Vol. II Tr. 349.)
 {¶ 27} Appellant testified that she "think[s]" Mrs. Hawkins "felt offended" when appellant decided to stop caring for Dariq after school started in September 2005. (Vol. II Tr. 328.) Appellant stated that Dariq no longer attended Northeast, and appellant preferred to continue caring for Deshawn at Northeast.
 {¶ 28} On cross-examination, appellant testified that, when she went through bankruptcy proceedings in 2005, she declared her income as $52,000 for the first ten months of that year. Appellee then asked appellant her opinion about the truth of appellee's witnesses. Appellant testified that Moore, Joseph, and Mr. and Mrs. Hawkins lied during their testimonies. Appellant's counsel asked no questions after this cross-examination.
 {¶ 29} During closing arguments, appellee noted that, in appellant's bankruptcy proceedings, appellant declared her income to be approximately $50,000 for the first ten months of 2005, yet records establish that appellant received approximately $80,000 from the Ohio Medicaid program during that time. Appellant's trial counsel reiterated during closing arguments that appellant did not submit false billings to the Ohio Medicaid program.
 {¶ 30} The jury instructions and jury verdict forms gave the jury the option to convict appellant of theft and Medicaid fraud at degrees lesser than the charged third-degree *Page 13 
felonies. The degree of the charges is based on the amount of money appellant unlawfully obtained from the Ohio Medicaid program. See R.C. 2913.40(E) and 2913.02(B)(2).
 {¶ 31} During deliberations, the jury asked for a calculator, and the court granted the request. Ultimately, the jury found appellant guilty on both third-degree felony counts of Medicaid fraud and theft. In a pre-sentencing memorandum, appellee asserted that if the trial court concluded that appellant's offenses merge, appellee elects that appellant be sentenced for theft. At sentencing, the court concluded that appellant's offenses merge, and the court sentenced appellant on the theft offense.
 {¶ 32} Appellant appeals, raising three assignments of error:
 I. The Defendant's conviction of Medicaid fraud and theft are against the manifest weight of the evidence.
 II. The State of Ohio presented insufficient evidence to sustain a conviction for Medicaid fraud and theft.
 III. The Defendant's trial counsel provided ineffective assistance of counsel and the Defendant was denied her Sixth Amendment right to a fair trial.
 {¶ 33} As an initial matter, we address appellee's motion to strike appellant's reply brief on the grounds that it raises a new issue concerning whether appellant's conviction is valid under State v.McGhee, Franklin App. No. 07AP-216, 2007-Ohio-6537. A reply brief affords an appellant an opportunity to reply to an appellee's brief, and it is improper to use it to raise a new issue. See Sheppard v. Mack
(1980), 68 Ohio App.2d 95, 97, fn. 1; State v. Newcomb, Franklin App. No. 04AP-1223, 2005-Ohio-4570, ¶ 29. Nevertheless, because appellee addressed the merits of appellant's new issue, we deny the motion to strike and will resolve the issue as part of appellant's *Page 14 
second assignment of error. In that assignment, appellant contends that her conviction is based on insufficient evidence. We disagree.
 {¶ 34} We address, first, appellant's argument based onMcGhee. In McGhee, we concluded that the prosecution may not try multiple instances of R.C. 2913.40 Medicaid fraud violations as a single offense. Id. at ¶ 17-18. Here, appellant notes that the indictment aggregated her multiple billings into one count of Medicaid fraud. UnderMcGhee, appellant argues that she cannot be convicted of Medicaid fraud. Contrary to appellant's contention, McGhee permits her to be convicted of Medicaid fraud; it limits her conviction, under the circumstances of this case, to a misdemeanor. While the state, in effect, contends any error is harmless because appellant was sentenced only on the theft, the trial court's judgment entry notes a finding of guilty for felony Medicaid fraud. Consistent with McGhee, we modify the trial court's judgment entry to reflect a finding of guilty for Medicaid fraud as a misdemeanor. Nonetheless, as set forth below, we affirm appellant's conviction for theft in all respects.
 {¶ 35} The balance of appellant's second assignment of error concerns whether sufficient evidence supports her conviction. The parties note that appellant's trial counsel did not raise a Crim. R. 29 motion for acquittal at trial. In State v. Roe (1989), 41 Ohio St.3d 18, 25, the Supreme Court of Ohio held that a defendant forfeits a sufficiency argument on appeal when the defendant fails to move for acquittal at trial. Relying on Roe, this court reviewed a sufficiency of the evidence argument under the plain error standard where a defendant failed to raise a Crim. R. 29 motion at trial. State v. Silguero, Franklin App. No. 02AP-234, 2002-Ohio-6103, ¶ 6. *Page 15 
 {¶ 36} More recently, however, the Supreme Court of Ohio held that a defendant did not forfeit a sufficiency of the evidence argument on appeal when he failed to raise a Crim. R. 29 motion at trial. SeeState v. Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57 (reviewing the sufficiency of evidence of a death penalty specification). Other appellate districts have followed. See State v. Coe, 153 Ohio App.3d 44,2003-Ohio-2732, ¶ 19-26; State v. Faith, Columbiana App. No. 03 CO 48,2004-Ohio-3048, ¶ 8-34; State v. Brown, Licking App. No. 2006-CA-53,2007-Ohio-2005, ¶ 35-43; State v. Thornton, Summit App. No. 23417,2007-Ohio-3743, ¶ 13-14.
 {¶ 37} In any event, we conclude that this issue is largely academic because a conviction based on legally insufficient evidence constitutes a denial of due process. Perrysburg v. Miller, 153 Ohio App.3d 665,2003-Ohio-4221, ¶ 57. "Accordingly, if the evidence is insufficient (regardless of whether we review it under a * * * plain-error standard), the conviction must be reversed." State v. Palmer, Hamilton App. No. C-050750, 2006-Ohio-5456, ¶ 8.
 {¶ 38} We next examine whether sufficient evidence supports appellant's conviction. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached *Page 16 
by the trier of fact. Jenks at 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility when reviewing a sufficiency of the evidence claim);State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 39} We limit our analysis to appellant's theft offense due to the trial court merging the Medicaid offense into the theft. In pertinent part, theft concerns a person knowingly obtaining or exerting control over another's property by deception with purpose to deprive the owner of the property. R.C. 2913.02(A). Here, examining the evidence in a light most favorable to appellee, and without assessing the credibility of the evidence against appellant, we conclude that sufficient evidence supports appellant's theft conviction.
 {¶ 40} First, sufficient evidence demonstrates that appellant billed the Ohio Medicaid program for services she did not provide, and appellant received money from these false billings. Moore and Joseph testified that appellant admitted to billing for services she did not provide, and appellant's conduct allowed for an inference that she engaged in false billings. Specifically, Mrs. Hawkins testified that appellant revealed her intention to bill for a day that she did not care for Dariq, and Mr. Hawkins testified that appellant asked him to sign blank time sheets that were later filled out to seek credit for time that appellant did not work. Mrs. Hawkins also testified that appellant only cared for Dariq on approximately ten weekends, but appellant billed for Dariq's care for the majority of the weekends from September 2002 to August 2005. Mr. and Mrs. Hawkins *Page 17 
also testified that appellant only cared for Dariq for a few weeks during the 2003 summer program, and, according to Moore, Mr. and Mrs. Hawkins told her that appellant cared for their son during one week in the summer of 2003 or 2004 while they were on vacation. However, appellant billed for Dariq's care during almost all of the summer of 2003 and 2004. Lastly, Mrs. Hawkins testified that appellant stopped caring for Dariq after the school year ended in June 2005, but appellant billed for Dariq's care during the summer of 2005.
 {¶ 41} Second, sufficient evidence demonstrates that appellant failed to bill for Dariq's care at the required reduced group rate when she simultaneously cared for Dariq and Deshawn. Moore testified that appellant admitted that she did not always bill at the group rate when required. Mr. and Mrs. Hawkins testified that, on school days, appellant only cared for Dariq at Northeast and not before or after school. Ms. Woods testified that appellant cared for Deshawn at Northeast. Thus, the jury could conclude that appellant should have billed at the reduced group rate on school days because she cared for both boys. Instead, appellant billed at the higher individual rate. Similarly, Mr. and Mrs. Hawkins testified that appellant cared for Dariq for a few weeks that he attended the 2003 summer program, and the trial court admitted into evidence the dates that Dariq attended the 2003 summer program. Ms. Woods also testified that appellant cared for Deshawn at the summer program. The jury could then properly infer that when appellant billed for both Dariq and Deshawn on dates that Dariq attended the 2003 summer program, appellant was simultaneously caring for both patients at the program and should have billed Dariq's care at the reduced group rate during these summer program days. Instead, appellant billed at the higher individual rate. *Page 18 
 {¶ 42} Theft is a third-degree felony if the value of property stolen is $100,000 or more and is less than $500,000. R.C. 2913.02(B)(2). Here, Moore calculated that appellant received $108,848.98 by billing for services that she did not perform, and by billing at the individual rate instead of the lower group rate when she simultaneously cared for both Dariq and Deshawn. Appellant argues that Moore's calculations, admitted through Exhibit Z1, are not credible. We do not consider credibility issues in a sufficiency of the evidence analysis, however. SeeJenks, paragraph two of the syllabus; Yarbrough at ¶ 79;Lockhart. Accordingly, we conclude that sufficient evidence proves that appellant's theft offense constitutes a third-degree felony. Accordingly, we overrule appellant's second assignment of error.
 {¶ 43} In her first assignment of error, appellant challenges her conviction as against the manifest weight of the evidence. In determining whether a verdict is against the manifest of the evidence, we sit as a "`thirteenth juror.' " Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.' "Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.' " State v.Brown, Franklin *Page 19 
App. No. 02AP-11, 2002-Ohio-5345, ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 44} Again, we limit our analysis to appellant's theft offense due to the trial court merging the Medicaid offense into the theft. Appellant argues that her theft conviction is against the manifest weight of the evidence because Mrs. Hawkins' testimony is not credible. In particular, appellant argues that the evidence contradicts Mrs. Hawkins' testimony that her children never stayed at appellant's home. In her testimony, however, Mrs. Hawkins acknowledged that her children stayed at appellant's home on a number of occasions.
 {¶ 45} Appellant also argues that the evidence establishes that she cared for Dariq and his siblings on significantly more occasions than what Mrs. Hawkins testified. As an example, Mrs. Hawkins testified that Dariq and his siblings stayed with appellant on approximately ten weekends. Conversely, Mr. McKinney testified that, between 2002 and 2005, Dariq and his siblings stayed with appellant and Mr. McKinney on approximately 800 days. We conclude, however, that Mr. McKinney's testimony is not credible. Not only did appellant fail to confirm the 800-day claim, Mr. McKinney's own testimony also cast doubt on his credibility. For example, Mr. McKinney testified that he consistently drove Dariq to school, yet he did not know the name of Dariq's school and could not name the street where the school was located. It was within the jury's province to reject Mr. McKinney's testimony.
 {¶ 46} Appellant also claims that she contradicted Mrs. Hawkins' testimony when she stated that she cared for Dariq and his siblings on approximately 100 weekends between 2002 and 2005. However, appellant also lacks credibility. While appellant *Page 20 
testified that she never billed more than 12 hours within a 24-hour period, billing records indicate that appellant billed 16-hour shifts for Dariq's care on July 6, 2003, July 19, 2003, and July 20, 2003. Likewise, in her bankruptcy proceedings, appellant claimed that her income was $52,000 during the first ten months of 2005, yet Ohio Medicaid payment records establish that the program paid appellant approximately $80,000 during the first ten months of 2005. It was within the jury's province to reject appellant's testimony.
 {¶ 47} Appellant also asserts that McLin contradicted Mrs. Hawkins' testimony. However, McLin testified that she saw Dariq with appellant three or four weekends per year in 2002, 2003, and 2004. Thus, McLin actually supports Mrs. Hawkins' claim that Dariq was with appellant for approximately ten weekends. Conversely, McLin's testimony contradicts appellant's testimony that Dariq stayed with her on approximately 100 weekends between 2002 and 2005, and it contradicts Mr. McKinney's testimony that Dariq stayed with them on approximately 800 days between 2002 and 2005.
 {¶ 48} Next, appellant contends that Mrs. Hawkins had a motive to testify untruthfully due to her being upset that appellant declined to continue Dariq's care after mid-2005. However, appellant merely speculated that Mrs. Hawkins was offended, and Mrs. Hawkins testified that she was fine with appellant not caring for Dariq after the school year ended in June 2005.
 {¶ 49} Additionally, appellant challenges the accuracy of Exhibit Z1 and its calculations. Appellant notes that Exhibit 1, Dariq's school attendance records, establishes that Dariq attended the 2005 summer program. Thus, appellant asserts that Exhibit 1 refutes the contention in Exhibit Z1 that (1) Dariq did not attend the 2005 *Page 21 
summer program, and (2) appellant falsely billed for caring for Dariq at the 2005 summer program. However, school administrators Jones and Rantala were not familiar with the portion of Exhibit 1 indicating Dariq's attendance at the 2005 summer program. Likewise, another portion of Exhibit 1 confirms that Dariq moved out of Franklin County in June 2005. Dariq would not have been eligible to attend the 2005 summer program due to his moving out of Franklin County. Mrs. Hawkins knew that Dariq was not eligible for the 2005 summer program and testified that Dariq did not attend the summer program that year. Thus, it was within the jury's province to reject Exhibit 1 and to conclude that appellant did not care for Dariq at the 2005 summer program.
 {¶ 50} Appellant also notes that Moore compiled Exhibit Z1 upon relying on Mr. and Mrs. Hawkins' out-of-court statements. However, Mr. and Mrs. Hawkins also testified about when appellant cared for Dariq. As an example, the combination of Mr. and Mrs. Hawkins' testimonies indicates that (1) on school days, appellant only cared for Dariq at school, (2) appellant cared for Dariq on approximately ten weekends, (3) appellant cared for Dariq for a few weeks of the 2003 summer program, (4) appellant did not care for Dariq during school holidays, and (5) appellant stopped caring for Dariq after the school year ended in June 2005. Exhibit Z1 accurately reflects this testimony.
 {¶ 51} We acknowledge that Exhibit Z1 also gives appellant credit for working one week in the summer of 2004. At trial, Moore explained that Mr. and Mrs. Hawkins told her that appellant cared for Dariq and his siblings for one week during either the summer of 2003 or 2004. Moore stated that, because Mr. and Mrs. Hawkins did not know the exact week, she gave appellant credit for the highest paid week between 2003 and 2004. While the Hawkins' in-court testimony did not address this one-week stay, *Page 22 
Moore used their out-of-court statements to give appellant credit for caring for Dariq. As this credit was a benefit to appellant, it does not support her argument that the conviction is against the manifest weight of the evidence.
 {¶ 52} Appellant also asserts that Mr. and Mrs. Hawkins' memories were unreliable. As an example, Mr. and Mrs. Hawkins could only recall two of the ten weekends that appellant cared for Dariq and his siblings. Moore addressed this issue by giving appellant credit in Exhibit Z1 for the two weekends that Mr. and Mrs. Hawkins identified, and Moore gave appellant credit for the remaining eight highest paid weekends. Thus, Exhibit Z1 reflects that appellant cared for Dariq during ten weekends, as Mrs. Hawkins testified. At trial, Mrs. Hawkins only recalled appellant caring for her children one night for approximately half of these weekends, and for the other weekends appellant cared for her children on two nights. Mrs. Hawkins did not specify the weekends that appellant cared for her children on one versus two nights. Moore resolves this issue in appellant's favor by giving appellant credit for the full ten weekends. Similarly, Mr. and Mrs. Hawkins did not tell Moore of the exact week that appellant cared for Dariq and his siblings during the summer of either 2003 or 2004. Moore gave appellant credit for the highest paid week in the summer of 2004 to account for one full week that Mr. and Mrs. Hawkins told Moore that appellant cared for Dariq and his siblings. Accordingly, Exhibit Z1 properly alleviates issues concerning Mr. and Mrs. Hawkins' failure to recall specific dates that appellant cared for Dariq.
 {¶ 53} Appellant also contends that Exhibit Z1 is not accurate because it does not reflect days that her 2003 nursing notes indicate that she cared for Dariq. We first note that appellant did not provide Moore these notes when Moore subpoenaed *Page 23 
appellant for information. Nonetheless, it was within the jury's province to reject appellant's nursing notes, given the credibility issues concerning appellant. Moreover, Exhibit Z1 actually conforms with the nursing notes to the extent that the notes depict appellant working one full week and ten additional weekends.
 {¶ 54} Similarly, Exhibit Z1 is not inaccurate for failing to reflect days that appellant's 2005 nursing notes and time sheets indicate that she cared for Dariq. Appellant admitted to Moore that she fabricated the nursing notes, and Mr. Hawkins' testimony establishes that the time sheets were also fabricated. Again, it was within the jury's province to reject these nursing notes and time sheets.
 {¶ 55} Appellant also argues that Exhibit Z1 is based on subjective inferences. As an example, in calculating when appellant was required to bill at the reduced group rate for caring for both Dariq and Deshawn at Northeast, Moore did not consider Deshawn's attendance records. Likewise, the evidence does not indicate what dates Deshawn attended or was absent from Northeast. Moore testified that she inferred that appellant cared for both Dariq and Deshawn at Northeast when appellant billed for both patients on school days. This is a reasonable inference. Mr. and Mrs. Hawkins testified that, on school days, appellant cared for Dariq at Northeast and not before or after school. Ms. Woods testified that appellant cared for Deshawn at Northeast. As we have explained, the jury could properly infer that, when appellant billed for both Dariq and Deshawn's care on school days, appellant cared for both patients together at school.
 {¶ 56} We also do not find Exhibit Z1 unreliable for Moore's failure to take into account Dariq's attendance records at Northeast. Again, in light of Mr. and Mrs. *Page 24 
Hawkins' testimony, it could reasonably be inferred that, when appellant billed for Dariq's care on school days, appellant cared for Dariq at Northeast. Alternatively, even considering the attendance records, it could be inferred from Mr. and Mrs. Hawkins' testimony that appellant falsely billed for caring for Dariq on days that he was absent from school.
 {¶ 57} Moreover, appellant contends that Exhibit Z1 is inaccurate because her trial counsel did not sufficiently cross-examine Moore about the exhibit. However, appellant's counsel cross-examined Moore extensively. It was within the jury's province to reject appellant's challenges to Exhibit Z1 and accept the credibility of Moore's calculations, as reflected in the exhibit.
 {¶ 58} For all these reasons, we hold that appellant's theft conviction is not against the manifest weight of the evidence. Therefore, we overrule appellant's first assignment of error.
 {¶ 59} Lastly, we address appellant's third assignment of error, which claims that appellant's trial counsel's performance constituted ineffective assistance. We disagree.
 {¶ 60} The United States Supreme Court established a two-pronged test for ineffective assistance of counsel. Strickland v. Washington (1984),466 U.S. 668. First, the defendant must show that counsel's performance was outside the range of professionally competent assistance and, therefore, deficient. Id. at 687. Second, the defendant must show that counsel's deficient performance prejudiced the defense and deprived the defendant of a fair trial. Id. A defendant establishes prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the *Page 25 
proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 61} A properly licensed attorney is presumed competent. State v.Samatar, 152 Ohio App.3d 311, 2003-Ohio-1639, ¶ 88, citing Vaughn v.Maxwell (1965), 2 Ohio St.2d 299, 301. Moreover, there is "`a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland at 689. In matters regarding trial strategy, we will generally defer to defense counsel's judgment.State v. Carter, 72 Ohio St.3d 545, 558, 1995-Ohio-104. See, also,State v. Carpenter (1996), 116 Ohio App.3d 615, 626, citingBradley at 144 (holding that we are to "presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of tactical decisions and do not constitute ineffective assistance"). We will only reverse on trial strategy grounds if defense counsel's trial strategy deviated from the standard of reasonableness. State v. Burgins (1988),44 Ohio App.3d 158, 160; State v. Newsome, Ashtabula App. No. 2003-A-0076, 2005-Ohio-3775, ¶ 8.
 {¶ 62} Appellant argues that her trial counsel rendered ineffective assistance in the way that he conducted Dr. Boyle's direct examination. Appellant notes that Dr. Boyle overheard the trial court's side bar conference with the parties about Dariq's doctor-patient privilege and that Dr. Boyle discredited trial counsel by refusing to answer his questions after overhearing the side bar conference. While Dr. Boyle initially expressed hesitation about answering questions, appellant's counsel ultimately elicited all of the information he sought. *Page 26 
 {¶ 63} Similarly, appellant argues that appellant's counsel lost credibility because the jury also overheard the side bar conference about the doctor-patient privilege. We reject this contention, as we find nothing in the record to demonstrate that the jury overheard the side bar conference.
 {¶ 64} Appellant also argues that her counsel rendered ineffective assistance by not raising a Crim. R. 29 motion for acquittal, especially in light of McGhee. McGhee changes no aspect of the theft offense on which appellant was sentenced, and, as noted, we modify the trial court's judgment entry to reflect that appellant was found guilty of misdemeanor Medicaid fraud. Even if counsel should have raised the issue, appellant suffered no prejudice. See State v. Walker, Franklin App. No. 04AP-813, 2005-Ohio-6365, ¶ 59.
 {¶ 65} Appellant also argues that her counsel was ineffective for not rehabilitating her after appellee cross-examined her with questions that inferred that she falsely reported her income during bankruptcy proceedings. The scope of questioning is generally a strategic matter left to the discretion of defense counsel. State v. Elmore,111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 116; State v. Lewis (Oct. 2, 1985), Allen App. No. 1-84-35. Here, appellant does not detail how her counsel could have effectively rehabilitated her. Regardless, we conclude that it was within the realm of reasonable trial strategy for appellant's counsel to decide not to draw additional attention to appellant falsely reporting her income during bankruptcy proceedings.
 {¶ 66} Next, appellant argues that her counsel should have sought a theft conviction at a degree lesser than that charged and that he could have accomplished this by arguing that the Ohio Medicaid program sustained damages in an amount less *Page 27 
than $108,949.98. In opening and closing arguments, appellant's counsel contended that appellant did not engage in false billings and that the Ohio Medicaid program sustained no damages from her conduct. Thus, appellant's counsel was seeking an acquittal. It was within the realm of reasonable trial strategy for appellant's counsel to seek an outright acquittal rather than a compromised verdict. See State v. Scott (Mar. 27, 2001), Franklin App. No. 00AP-868.
 {¶ 67} Appellant also argues that her counsel was ineffective for not arguing that Exhibit Z1 was created from inadmissible hearsay. Appellant's counsel objected to the admission of Exhibit Z1, but not on grounds that it was created from inadmissible hearsay. Although the trial court did not specify the evidentiary rule that allows Exhibit Z1 into evidence, the trial court presumably admitted the exhibit under Evid. R. 1006, which states that the "contents of voluminous writings * * * which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." In Repp v. Med-CareProds. (Jan. 25, 1990), Cuyahoga App. No. 56222, the Eighth District Court of Appeals concluded that a summary was not admissible under Evid. R. 1006 because the summary was based on a former bookkeeper's out-of-court statements. The appellate court concluded that "[t]his * * * amounts to hearsay and is inadmissible." Id., citing Covington v.Sawyer (1983), 9 Ohio App.3d 40. Here, Moore created Exhibit Z1 after obtaining out-of-court statements from Mr. and Mrs. Hawkins, but Mr. and Mrs. Hawkins testified at trial, and Exhibit Z1 generally reflects their testimonies. In the instance that Exhibit Z1 does not reflect Mr. and Mrs. Hawkins' testimonies, but reflects their out-of-court statements to Moore, the out-of-court statements are used to give appellant credit for the one full week in either 2003 or 2004 *Page 28 
that appellant cared for Dariq. Thus, we conclude that appellant's counsel was not ineffective for failing to object to the admissibility of Exhibit Z1 on grounds that it was created from inadmissible hearsay. See Strickland at 694.
 {¶ 68} Lastly, appellant argues that the cumulative effect of her trial counsel's ineffectiveness deprived appellant of a fair trial. Having discerned no ineffectiveness, however, we reject this argument.
 {¶ 69} For all these reasons, we conclude that appellant's trial counsel's performance did not constitute ineffective assistance. Accordingly, we overrule appellant's third assignment of error.
 {¶ 70} In summary, we deny appellee's motion to strike appellant's reply brief, and we overrule appellant's first, second, and third assignments of error. Therefore, we affirm, as modified, the judgment of the Franklin County Court of Common Pleas.
Motion to strike denied; judgment affirmed as modified.
BRYANT and GREY, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1